IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAVISTAR, INC. and INTERNATIONAL TRUCK INTELLECTUAL PROPERTY COPMANY, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | |
| NEW BALTIMORE GARAGE, INCORPORATED, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs, Navistar, Inc. and International Truck Intellectual Property Company, LLC

(collectively "Navistar"), by their attorneys, bring this complaint against New Baltimore Garage,

Incorporated for injunctive relief and alleges as follows:

## INTRODUCTION

1.     This action has been filed by the Plaintiff to combat Defendant's wrongful

conduct and includes claims for breach of contract, violation of the Copyright Act (17 U.S.C. §§

101-1332), violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030), and violation of

the Illinois Trade Secrets Act (765 Ill. Comp. Stat. 1065/1-9).

2.     Defendant, New Baltimore Garage, Inc., is a licensed owner, operator, and

manager of a retail business that is actively selling or offering for sale, parts, service and support

for Navistar automobile, heavy trucks and equipment in conjunction; however, it has exceeded

the scope of its license by granting unauthorized third parties access to proprietary and

confidential Navistar information and materials, and allowing those third parties to make unauthorized reproductions, distributions, and/or displays of the Navistar's proprietary materials.

3.      Navistar seeks a Permanent Injunction, costs, and attorneys' fees as authorized by the Copyright Act, Computer Fraud and Abuse Act, and Illinois common law.

## PARTIES

4.      Plaintiff Navistar, Inc. is a Delaware corporation with its principal place of business at 4201 Winfield Road, Warrenville, Illinois 60555.

5.      Plaintiff International Truck Intellectual Property Company is an Illinois limited liability corporation with its principal place of business at 4201 Winfield Road, Warrenville, Illinois 60555.

6.      On information and belief, New Baltimore Garage, Inc. is a corporation duly organized and existing under the laws of Virginia with its principal place of business at 5340 Lee Highway, Warrenton, Virginia 20187.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338(a) as the Plaintiffs' cause of action arises under the Copyright Act, 17 U.S.C. §§ 101-1332, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Further, this Court has jurisdiction over Plaintiff's Illinois state statutory and common law claims pursuant to 28 U.S.C. § 1367.

8.      This Court may exercise personal jurisdiction over Defendant based on its contacts with this forum, including at least, regularly and intentionally transacting business within Illinois as well as the making or performance of a contract or promise substantially connected with Illinois, including contractual provisions for choice of law and selection of Illinois law.

2

9.     Venue is proper within the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(b), (c), 1400(a).

## FACTUAL BACKGROUND

10.     Navistar is a long-established global company engaged in the manufacture, sale, and service of trucks, buses, engines and parts.  Navistar manufactures and markets International® brand commercial trucks and mid-range diesel engines.  It is a private-label designer and manufacturer of diesel engines for the pickup truck, van, and SUV markets.

11.     Navistar operates in segments.  The Truck segment manufactures and distributes a line of diesel-powered class 6, 7, and 8 trucks, and school buses in the common carrier, private carrier, government/service, leasing, construction, energy/petroleum, and student transportation markets in the United States, Canada, Mexico, and other countries.  The Engine segment designs and manufactures medium range diesel engines for sale to original equipment manufacturers in the United States and Brazil, sells engines for industrial and agricultural applications, and provides customers with proprietary products needed to support the International engine lines, as well as other standard engine and aftermarket parts.  The International Truck Intellectual Property Company segment holds and administers the intellectual property of Navistar.

12.     Each of these segments creates, develops, oversees, controls, and utilizes proprietary and confidential information essential to Navistar's success (hereinafter collectively referred to as "Navistar Proprietary and Confidential Information and Materials").

13.     A significant aspect of Navistar's business is the merchandising and licensing of distinctive elements associated with its products and services including, but not limited to, a

variety of materials protected under U.S. Copyright Law (hereinafter collectively referred to as "Navistar Materials")[1].

14.     Navistar also owns all rights, title, and interest in and to, and holds the exclusive rights to market and sell merchandise bearing the trademarks, trade names, service marks, artwork, and other distinctive elements for and related to the business (hereinafter the "Navistar Trademarks").

15.     Navistar has sold many billions of dollars worth of goods and services in the United States and worldwide and has spent substantial sums in advertising its products and services.

16.     As a result of such extensive sales and advertising, the Navistar name and trademarks have become famous in the United States, as well as internationally, and represent extraordinarily valuable goodwill.  The Navistar Trademarks and variants thereof are exclusively associated with the high quality automotive goods and related services offered by Navistar.

17.     Navistar's intellectual property, the Navistar Proprietary and Confidential Information and Materials, and the Navistar Materials are vital assets to the company.

18.     Navistar protects its intellectual property, the Navistar Proprietary and Confidential Information and Materials, and the Navistar Materials through a variety of measures.

19.     One security measure implemented by Navistar is the use of technological barriers to prevent unauthorized access to various Navistar systems, including the protection of information on Navistar's "Dealer Communication Network" ("DCN").

---

[1] These materials constitute copyrightable subject matter subject to protection under the Copyright Act, 17 U.S.C. § 102.  Navistar intends to file applications to register copyrights in these materials and amend the Complaint to include claims for copyright infringement.

20.     Navistar's DCN system is a proprietary, web-based computer program which includes software and underlying documents protected by copyright law, which enable communication between Navistar, franchisees, and authorized associate dealers via franchisee's and dealer's computer system and Navistar's host telecommunications facility.  Information available on DCN includes items such as schematics for equipment/trucks, parts information and capability to order same, proprietary and confidential pricing information (including discounts offered only to franchisees and dealers).

21.     Navistar's DCN system and its associated data are covered by United States Federal Copyright Law and access is controlled by password issued only to authorized Navistar dealers who have agreed to Navistar's terms.

22.     Access to the DCN system affords Navistar franchisees and associate dealers with a valuable economic and competitive advantage.  Franchisees and associate dealers use the DCN to diagnose issues with Navistar trucks and/or equipment for customers, determine the correct part to order, and order the correct part at the discount afforded by Navistar only to authorized franchisees and associate dealers.

23.     In order to be authorized to utilize the DCN, each dealer must sign and agree to Navistar's Dealer Communication Network System and Services Agreement.

24.     At all times relevant, the DCN System and Services Agreement states:

- **USE OF DCN**:  DCN allows Dealer access to certain information and services by using the ID and password assigned to Dealer by [Navistar].  Dealer is solely responsible for Dealer's assigned IDs and passwords.  Dealer shall not access DCN using another ID and password.  Dealer will use DCN solely for Dealer's internal business purposes and exercise due diligence in maintaining safeguards to protect DCN and all IDs and passwords thereto.  (Section 3)

- Dealer acknowledges that unauthorized access or use of this computer network is illegal and may be punishable by fines or imprisonment.  (Section 3)

5

- Dealer will comply with all of [Navistar's] technical specifications that govern DCN as set forth herein (Section 4)

- **CONFIDENTIALITY**: All parties will treat the DCN including without limitation [Navistar] software or data of other users of the DCN as confidential and proprietary, whether or not such information is labeled as such ("Confidential Information"). Dealer shall not attempt to access information not intended for the Dealer, and if Dealer inadvertently obtains access, Dealer will not further disclose nor use such information but will immediately report such access to the attention of [Navistar]… (Section 5)

- . . . Confidential information is defined as any information and other data not in the public domain and with respect to [Navistar] it specifically includes [Navistar] software and systems as defined herein. (Section 5)

- The parties further agree to make reasonable efforts not to discuss or otherwise make available such Confidential Information to any third parties, including without limitation [Navistar's] or Dealer's competitors as applicable, and that such Confidential Information will only be given to their employees or agents who: a) have a reasonable business need to know, b) are informed of its confidential nature, and c) are bound by this Agreement, its rules, instructions and restrictions, and the confidentiality provisions set forth in this paragraph. . . (Section 5)

- Dealer acknowledges [Navistar's] or its Licensor's copyrights in the DCN software and related documentation regardless of whether a copyright notice appears on the software or documentation or not (Section 13)

- Dealer agrees that Dealer will not sublicense or distribute copies of DCN to any third party in any form or media. . . (Section 13)

- Dealer shall not permit use of DCN by any party unauthorized by [Navistar]. (Section 17)

25.     On August 11, 2008, Navistar sent Defendant a cease and desist letter when it was alerted that Defendant may have provided a third party access to DCN without authorization.

26.     Shortly thereafter, New Baltimore responded to the correspondence, denying that it authorized any third party to access DCN.

27.     In August and September of 2009, Navistar hired investigative firm Pinkerton to conduct an investigation of the third party, Liberty Equipment Repair, Inc. ("Liberty") which

revealed evidence of employees (1) logging into Navistar's website on August 10, 2009 and printing off a spindle spec, (2) logging into Navistar's website on August 31, 2009 using a DYY access code, and (3) logging into Navistar's website on September 18, 2009 using a DYY access code and printing steering gear specs.

28.     On October 13, 2009, Navistar sent Liberty a cease and desist letter requesting Liberty cease all access to Navistar's DCN; provide Navistar with complete details as to how Liberty obtained access; that Liberty destroy all DCN passwords.

29.     On October 22, 2009, Liberty responded claiming it was unaware of any access to DCN taking place since its termination in 2005 and further requesting specific information regarding unauthorized access that may have taken place.

30.     On November 12, 2009, Navistar's authorized dealer, International Truck Sales of Richmond (ITSR) filed a complaint against Liberty in the Circuit Court of City of Fredericksburg, VA alleging (1) tortious interference with business expectancy and (2) misappropriation of trade secrets.

31.     Discovery in that case commenced in late 2010 and in Liberty's Second Response to ITSR's First Request for Admission Number 7, Liberty admitted that it believed its employees accessed DCN and further admits to utilizing DCN with the permission of New Baltimore Garage in its Second Response to ITSR's First Set of Interrogatories Number 3.

32.     On information and belief, in the course of these activities, Defendant allowed third parties, including Liberty, to copy Navistar's proprietary materials and access Navistar's computer systems without and in excess of authorization.

33.     Defendant's activities interfere with and hinder Navistar's business; burden Navistar's computer systems and personnel resources; impair efficiency, fairness and simplicity

of Navistar services; and harm and interfere with Navistar's relationship, reputation and goodwill with legitimate Navistar users.

## FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

1.      Navistar incorporates herein by reference each and every allegation in the preceding paragraphs.

2.      Use of DCN system and services are governed by and subject to the Dealer Communication Network System and Services Agreement.

3.      Defendant affirmatively accepted and agreed to the terms of the Agreement when it signed the Agreement on December 7, 2004.

4.      Defendant's actions, as described above, have willfully, repeatedly and systematically breached the terms of the Agreement.

5.      Navistar has performed all conditions, covenants, and promises required of it in accordance with the terms of the Agreement.

6.      Defendant's acts greatly and irreparably injure Navistar and will continue to so injure Navistar unless restrained by this Court; wherefore, Navistar is without an adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT)

7.      Navistar incorporates herein by reference each and every allegation in the preceding paragraphs.

8.      Defendant circumvented the digital security of Navistar's Dealer Communications Network and related computers which protected Navistar's Materials.

9.      Such actions were willful and for the commercial advantage of Defendant.

10. The circumvention of the digital security is a violation of 17 U.S.C. § 1201.

11. Defendant's acts greatly and irreparably injure Navistar and will continue to so injure Navistar unless restrained by this Court; wherefore, Navistar is without an adequate remedy at law.

12. Navistar is further entitled to recover its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203.

### THIRD CLAIM FOR RELIEF
### (VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT)

13. Navistar incorporates herein by reference each and every allegation in the preceding paragraphs.

14. Defendant, through means of one or more interstate communications, intentionally accessed Navistar's computer system without authorization and/or exceeded the access authorized by Navistar.

15. As a direct result of said conduct, Defendant accessed obtained confidential business information from a protected computer in interstate commerce.

16. Defendant took these actions deliberately, intentionally, knowingly, and maliciously.

17. As a direct and proximate result of the above-alleged acts and conduct by Defendant, Navistar has suffered a loss of at least $5,000.

18. Defendant's acts greatly and irreparably injure Navistar and will continue to so injure Navistar unless restrained by this Court; wherefore, Navistar is without an adequate remedy at law.

19. Pursuant to 18 U.S.C. § 1030(g), Navistar is entitled to an injunction against Defendant's continuing reproduction, distribution and display of Navistar's Materials.

9

## FOURTH CLAIM FOR RELIEF
### (MISAPPROPRIATION OF TRADE SECRETS)

20.     Navistar incorporates herein by reference each and every allegation in the preceding paragraphs.

21.     Navistar has protectable trade secrets in the confidential information to which Defendant had full access.

22.     Navistar derives economic value from these trade secrets due to them not being generally known to other persons who could obtain economic value from their disclosure or use.

23.     Navistar has made reasonable efforts under the circumstances to maintain its trade secrets' secrecy and confidentiality.

24.     Defendant has misappropriated or threatened to misappropriate Navistar's trade secrets.

25.     Defendant's acts greatly and irreparably injure Navistar and will continue to so injure Navistar unless restrained by this Court; wherefore, Navistar is without an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Navistar prays for judgment as follows:

1.     Enjoining and restraining Defendant from selling any product that contains, or otherwise using or disclosing Navistar's copyrighted, confidential, or proprietary materials or information;

2.     Enjoining and restraining Defendant from selling any product that contains or otherwise uses any derivative of Navistar's copyrighted, confidential, or proprietary materials or information;

3.    Requiring Defendant return to Navistar all of its property, including all

information or tangible items in whatever form, and all copies or derivatives thereof, reflecting

or containing Navistar's confidential or proprietary business information;

4.    Awarding Navistar the costs of this action and its reasonable attorneys' fees;  and

5.    Awarding Navistar such other relief as this Court may deem just and proper.


**DATED**:      September 8, 2011          Respectfully submitted,

**PARTRIDGE IP LAW P.C.**
Mark V.B. Partridge (mark@partridgeiplaw.com)
Colin T.J. O'Brien (colin@partridgeiplaw.com)
Jordan A. Arnot (jarnot@partridgeiplaw.com)
161 North Clark Street
Suite 4700
Chicago, Illinois 60601
Tel:    (312) 634-9500
Fax:    (312) 634-9505

*Attorneys for the Plaintiffs*
*Navistar, Inc. and International Truck Intellectual*
*Property Company, LLC*